UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARIAH N. COOPER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-61-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mariah N. Cooper on February 10, 2017, and on Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed on July 19, 2017. Plaintiff requests that the July 23, 2015 decision of the Administrative Law Judge denying her claim for supplemental security income be reversed. On September 27, 2017, the Commissioner filed a response, and Plaintiff filed a reply on October 18, 2017. For the following reasons, the Court grants Plaintiff's request for reversal and remands this matter for further proceedings.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for supplemental security income on May 2, 2013, alleging disability beginning April 1, 2013, based on postpartum depression. The claim was denied initially and on reconsideration. On March 3, 2015, Administrative Law Judge Roxanne J. Kelsey ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's mother, Plaintiff's attorney, and an impartial vocational expert. On July 23, 2015, the ALJ issued a written decision denying benefits, making the following findings:

    1.    The claimant has not engaged in substantial gainful activity since May 2, 2013, the application date.

2. The claimant has the following severe impairments: depression, including post-partum depression; anxiety; bipolar disorder; headaches.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: lacks the ability to understand, remember and carry out detailed instructions because of her moderate limitations in pace, but retains the sustained concentration necessary for simple work of a routine and repetitive type; would not be able to perform work requiring a production or assembly line pace; would be able to perform work permitting a more flexible pace; should experience no more than occasional changes in the work setting.

5. The claimant has no past relevant work.

6. The claimant was born [in 1991] and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 2, 2013, the date the application was filed.

(AR 17-26).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from

4

engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and an award of benefits or, in the alternative, remand for further proceedings, arguing that the ALJ erred in the residual functional capacity assessment by improperly evaluating her mental impairments, headaches, and obesity. The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d

471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). The Court considers each of Plaintiff's arguments in turn.

## A. Mental Impairments

The ALJ found that Plaintiff has the severe mental impairments of depression, including post-partum depression, anxiety, and bipolar disorder. At step three of the sequential analysis, the ALJ found that none of the severe mental impairments meets or equals a listing, but, in doing so, found that Plaintiff has moderate difficulties in social functioning and moderate difficulties in concentration, persistence, or pace. (AR 18-19).

In considering the evidence of record in relation to Plaintiff's mental impairments in the context of the residual functional capacity, the ALJ noted Plaintiff's testimony that she has trouble remembering things, that she does not help with chores and does not have hobbies, that her medication does not help, and that she experiences side effects from her medications. (AR 20). The ALJ included Plaintiff's mother's reports that Plaintiff spends most of her day in her bedroom, that she does not help care for her own three-year old son, that she is depressed and cries all the time, and that she was active before giving birth to her son but since then she does nothing. *Id*. The ALJ then considered the medical evidence of record regarding Plaintiff's mental impairments, including Plaintiff's treatment for depression and anxiety, her visits to the emergency room, and the times she was hospitalized for mental health issues. In assessing her credibility, the ALJ noted that Plaintiff's condition "waxes and wanes." (AR 23). The ALJ also concluded that a number of setbacks were associated with a lack of compliance with prescribed treatment at her mother's insistence, which the ALJ found to be distinguishable from instances in which a patient herself refuses treatment as a symptom of the mental illness. *Id*.

Then, in formulating the RFC, the ALJ concluded that Plaintiff lacks the ability to understand, remember, and carry out detailed instructions because of her moderate limitations in pace but has the sustained concentration necessary for simple work of a routine and repetitive type. (AR 20). In addition, the ALJ found that Plaintiff would not be able to perform work requiring a production or assembly line pace but would be able to perform work permitting a more flexible pace. *Id*. Finally, the ALJ found that Plaintiff should experience no more than occasional changes in the work setting. *Id*.

In her brief, Plaintiff raises several concerns regarding the ALJ's assessment of her mental impairments and how the ALJ articulated support for the mental RFC in the decision. Notably, Plaintiff does not challenge the ALJ's recitation of the medical records or Plaintiff's hospitalizations with the exception of one statement regarding medication compliance, discussed below. First, Plaintiff argues that the ALJ failed to discuss in the context of the RFC decision Plaintiff's moderate difficulties in social functioning, which the ALJ identified at step three. (AR 18). The ALJ gave "significant weight" to the opinions of the state agency psychological consultants, (AR 24), both of whom found that Plaintiff could relate to her coworkers and supervisors "on at least a superficial basis." (AR 71, 83). However, the ALJ provided no discussion of Plaintiff's ability to interact with coworkers and supervisors in the RFC analysis and did not incorporate any relevant limitations in the hypothetical to the vocational expert. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) (recognizing that "even a moderate limitation on responding appropriately to supervisors may undermine seriously a claimant's ability to work" (citing 20 C.F.R. § 404.1545(c); Social Security Ruling 85-15)); *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Remand is required on this issue because it is not clear whether the ALJ would have included additional limitations in

the RFC related to social functioning and because, if she had, it is not clear what jobs the vocational expert would have identified.

Next, Plaintiff argues that, although the ALJ noted that Plaintiff's condition "waxes and wanes," the ALJ failed to discuss the impact of the good and bad periods, making it unclear how Plaintiff can sustain work on a full-time basis. This is not an instance in which a doctor filled out a form indicating that Plaintiff would have "good days and bad days"; rather, the ALJ herself observed the waxing and waning of Plaintiff's symptoms based on the record evidence. However, the ALJ did not discuss how Plaintiff would be able to sustain work during her periods of increased symptoms. On remand, the ALJ will have an opportunity to discuss how the Plaintiff is able to work in the context of the unpredictable nature of her mental illness. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010). In this context, the ALJ is also directed to consider and discuss the circumstances in which Plaintiff's improved condition is reported in the record, for example, upon discharge from a mental health hospitalization.

Third, Plaintiff argues that the ALJ erred in downplaying the severity of her mental health condition on the basis of an August 7, 2013 treatment note that the ALJ took to mean that Plaintiff stopped all her medication at her mother's request. In the decision, the ALJ wrote: "A note from August 7, 2013 indicated that the claimant had stopped taking all of her medication at her mother's request." (AR 22). This record, from an emergency room hospitalization, provides: "Patient stopped all medication per mother's request." (AR 445). Thus, the ALJ accurately represented the record. However, there is no context for the statement in the hospital record; the Court notes that Plaintiff presented to the emergency room with complaints of vomiting and reported that she had been feeling

9

weak for the prior two days with vomiting and diarrhea from the stomach flu. (AR 446, 452). Thus, it is not clear why the discontinuation of her medications under these conditions decreases Plaintiff's credibility as to the severity of her mental health impairments.

The ALJ then misstated the record regarding a March 10, 2014 treatment note. (AR 22). The ALJ wrote: "On March 10, 2014, however, the claimant reported an *increase* in her depression, which was said to be associated with medication *noncompliance*." (AR 22) (emphasis added) (citing Ex. 14F/15). However, the March 10, 2014 treatment record from Dr. Fanelli provides that Plaintiff "report[ed] *good compliance* with all medications" and that she reported "a dramatic *remission* of the pain, depression, and headaches. The change was in association with the med *compliance*, though she also started on a new med, and this seems to have had an impact." (AR 592) (Ex. 14F/15) (emphasis added). Thus, the ALJ's conclusion in the closing paragraph of the section that "a number of the setbacks are associated with a lack of compliance with prescribed treatment at her mother's [insistence], which I find to be quite different from an instance where patients refuse treatment as a symptom of mental illness" is not supported by the evidence of record. On remand, the ALJ will have an opportunity to reevaluate Plaintiff's history of medication compliance and its affect on her subjective statements.

Fourth, Plaintiff contends that the ALJ failed to include Plaintiff's moderate limitation in concentration, persistence, or pace in the question to the vocational expert. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2014). However, Plaintiff fails to acknowledge that the RFC does not simply limit her to "simple, routine, and repetitive tasks," which has often been criticized by the Seventh Circuit Court of Appeals as not reflecting moderate restrictions in concentration, persistence, or pace. Rather, in this case, the ALJ took into consideration Plaintiff's specific impairment-related

10

limitations created by her response to the demands of work. The ALJ found that despite her moderate limitations in pace, Plaintiff retained the concentration necessary for work of a routine and repetitive type as long as she had a flexible pace that did not require an assembly line pace. (AR 19-20); *see* Social Security Ruling 85-15; Social Security Ruling 96-8p. This is supported by the state agency physician's opinion, which provides that "[t]he evidence suggests that claimant can understand, remember, and carry-out simple tasks" and that "[t]he claimant can attend to task for sufficient periods of time to complete tasks." (AR 71, 83). Likewise, Plaintiff contends that the ALJ did not account for her inability to handle stress, citing the Adult Function Reports completed by Plaintiff's mother indicating that Plaintiff does not handle stress well. However, the state agency physician also found, based on an examination of the evidence of record, that Plaintiff "can manage the stress involved with simple work." (AR 71, 83). Plaintiff does not identify any medical records or testimony demonstrating that these specific restrictions in the RFC do not account for her personal limitations in concentration, persistence, or pace.

## B. Headaches

At step two of the sequential analysis, the ALJ found that Plaintiff has the severe impairment of headaches. In the RFC analysis, the ALJ recited Plaintiff's testimony that she has daily headaches that last for hours, that she is unable to do anything other than watch television when she has headaches, and that her medication does not help with the headaches. The ALJ then concluded that, although Plaintiff's headaches could be expected to cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible for the reasons explained in this decision." (AR 21).

Yet, the ALJ provides no explanation for why Plaintiff's testimony regarding the limiting effects of her headaches is not fully credible. The ALJ provided an accurate, but significantly incomplete, summary of the medical records documenting Plaintiff's headaches, all of which is consistent with Plaintiff's hearing testimony. (AR 23-24). Notably, the ALJ does not include several emergency room visits that depict the nature and severity of the headaches, and the ALJ's recitation of the evidence does not include any description of plaintiff's "headache complaints" as documented in the medical records, which are also consistent with her hearing testimony.

For example, when she presented to the emergency room on April 15, 2012, with complaints of headache, Plaintiff described the pain as chronic in nature. (AR 375). The same week, Plaintiff again sought emergency room care on April 19, 2012, for headache and vomiting, rating her pain as 10 on a scale of 10, with 10 being the worst pain, and describing the headache as throbbing and constant in nature. (AR 384, 385). On April 22, 2012, Plaintiff presented to the emergency room with complaints of persistent migraine, complaining of photophobia. (AR 395). The doctor prescribed Imitrex. (AR 399). Notably, the ALJ only mentions one, not three, emergency room visits for headaches in April 2012. (AR 23). Moreover, the ALJ does not describe Plaintiff's reported symptoms from these visits but instead notes only that Plaintiff had an unremarkable CT of the head. The records show that the head CT was actually from February 15, 2012; was performed based on a diagnosis of persistent headaches; and found no intracranial hemorrhage or mass effect, well-aerated mastoid air cells, and well-aerated paranasal sinuses (but the maxillary sinuses were not examined). *See* (AR 23) (ALJ decision citing Ex. 7F/10); (AR 373) (Ex. 7F/10, 2/15/2012 CT scan).

The ALJ also noted the comment in the April 22, 2012 emergency room visit record that Plaintiff's headache complaints might be "related to social issues." (AR 23) (citing Ex. 7F/36).

12

However, this was not a finding by the emergency room doctor, who wrote: "Spoke with Dr. Kirby, requested Inderall 60mg being increased to BID and Imitrex continued. She has been evaluated by Neurology and had CT head and EEG. Dr. Kirby states this may be related to social issues and will follow up at scheduled appointment this week." (AR 399).

The ALJ noted that Plaintiff was seen in the emergency room on May 24, 2013 "with headache symptoms." (AR 23). The ALJ did not note that Plaintiff presented with complaints of persistent headache for two to three days, that she had a history of migraine headaches, and that Depakote did not help alleviate her symptoms. (AR 235, 236, 239). The only other comments by the ALJ were that a head CT was essentially negative and that Plaintiff improved with medication treatment in the hospital. (AR 23) (citing Ex. 1F/10, 1F/6). However, the ALJ did not mention the fact that Plaintiff was hospitalized from May 25, 2012, to May 29, 2012, for the evaluation of migraine headaches or that Dr. Kirby was the admitting doctor. There is no reference in this record to her headache being related to "social issues." (AR 402-403). Plaintiff described having headaches with a burning sensation on the left side of her head with associated nausea, vomiting, phonophobia, photophobia, and scent sensitivity. (AR 402). She also described depressive symptoms due to chronic pain. *Id*. The ALJ did not acknowledge or discuss this four-day hospitalization. The only aspect of the hospitalization discussed by the ALJ was a lumbar puncture study done on May 26, 2012, noting that it was negative. (AR 23) (citing Ex. 7F/40).

The ALJ noted that Plaintiff was "seen again on June 18, 2012 with headache complaints" but did not indicate that it was again a hospital admission; Plaintiff was discharged on June 22, 2012. *See* (AR 23); (AR 423-437). Plaintiff complained of sleep disturbance, decreased concentration, and

13

agitation. (AR 426). Plaintiff described severe pain involving intense "burning" in the back of her neck and the occipital part of her head. (AR 253).

Between July 2013 and January 2015, Plaintiff treated with Ms. Diana Garcia-Burns, NP at Health Line for non-migrainous vascular headache, depression, obesity, and type 2 diabetes mellitus. (AR 357-58, 524-47, 549-60). Plaintiff reported symptoms of headache, neck pain, neck muscle tightness, and facial pain and burning. On July 12, 2013, Plaintiff was seen as a new patient and rated her head pain as 10 on a scale of 1 to 10, with 10 being the most pain. (AR 357). On August 15, 2013, Plaintiff reported headache. (AR 560). On October 2, 2013, Plaintiff was seen for a medication refill but also reported that she continued to have chronic headaches and that she had just started taking Imitrex prescribed by Dr. Fanelli. (AR 555). On January 17, 2014, Plaintiff reported that her headache had returned, rating the pain as 10 out of 10, despite previous relief with Depakote. (AR 549). In December 2015, Plaintiff reported to Ms. Garcia-Burns that she had seen Dr. Vyas the previous month for headaches. The ALJ did not discuss any of these records.

Instead, the ALJ noted two treatment records from Ms. Garcia-Burns in which it was noted that Plaintiff did not complain of headaches under "Review of Systems." First, on February 20, 2014, Ms. Garcia-Burns noted, at what the ALJ describes as a "recheck visit," "no headache" under "Review of Systems." (AR 23) (citing Ex. 12F/21); (AR 544) (Ex. 12F/21). The ALJ's characterization suggests that Plaintiff's headaches were being "rechecked"; however, the purpose of the visit was for "results follow up." (AR 542). The ALJ failed to note that Ms. Garcia-Burns listed "headache" under "Active Problems." *Id*. Second, the ALJ commented that Plaintiff "denied headache pain" at an "October 6, 2014 healthcare visit." (AR 23) (citing Ex. 12F/9). This visit was

14

for follow up on her diabetes mellitus and another unrelated issue. (AR 530). Again, "headache" is listed under "Active Problems." *Id.*

During a medication management and psychotherapy session with Dr. Fanelli on August 28, 2013, Plaintiff complained of headache. (AR 507, 582). Dr. Fanelli diagnosed migraine. (AR 503, 578). On March 10, 2014, Plaintiff complained of headache, and Dr. Fanelli diagnosed migraine. (AR 591). The ALJ did not acknowledge these records in addressing Plaintiff's headaches.

The ALJ noted the February 9, 2015 neurology consultation (incorrectly indicated by the ALJ as occurring on February 3, 2015), to evaluate Plaintiff's continued headache complaints. (AR 23) (citing Ex. 21F/5); (AR 644). The ALJ noted the comment in that record that the prior neurologic testing had been unrevealing, that the impression was "common migraine headaches" and "superimposed chronic tension headaches," that further testing was ordered, and that her medication was adjusted. (AR 23); (AR 645). The ALJ does not discuss the fact that this examination occurred during Plaintiff's hospitalization in relation to her mental health issues. The ALJ also does not discuss Plaintiff's description of these headaches on February 9, 2015, with Plaintiff reporting that she was experiencing "burning of her head emanating from the cervical paraspinal region to the posterior occiput," which she experienced daily and rated at 8 out of 10 in quality. (AR 644). Plaintiff reported that she cannot get any relief from her headaches. *Id.* When Plaintiff was hospitalized later in February 2015 for mental health issues, the records again show her complaining of headache. (AR 710).

The ALJ then gave only partial weight to the opinion of the state agency consultants who opined that Plaintiff does not have any severe medical impairments because the ALJ found that Plaintiff's "chronic headaches as well as her mental illness are severe. While the etiology of the

headaches is not clear, the claimant's medical records confirm that she consistently reported having headaches (e.g. 1F; 7F; 12F; 21F). That said, neurological testing has been mostly unremarkable." (AR 23). The ALJ then noted the February 4, 2015 CT scan, the February 6, 2015 EEG, and the February 7, 2015 MRI. (AR 23-24). The ALJ commented that Plaintiff has also had periods where she has reported being headache free. (AR 24).

The ALJ did not properly consider the evidence of Plaintiff's headaches, identifying only certain records that downplay the severity of the headaches without discussing significant other records or aspect of records that support Plaintiff's complaints. The ALJ provided no analysis of how the effects of Plaintiff's headaches that are supported by the record evidence are accounted for in the RFC. And, the ALJ did not determine the frequency and severity of Plaintiff's headaches despite sufficient evidence of record submitted by Plaintiff from which to do so. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (finding that the ALJ erred by not confronting evidence that does not support his conclusion and explain why it was rejected, specifically for not discussing how the plaintiff's headaches affected her ability to work); *Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012) (finding that the ALJ failed to consider the relevant evidence related to the plaintiff's headaches, including daily activities, the timing and duration of the headaches, and the measures taken to treat the headaches).

The ALJ suggests generally at the outset of the RFC analysis that Plaintiff is not fully credible but does not explain why Plaintiff's testimony about the effects of her headaches is not credible, especially in light of the longitudinal records of treatment for headaches. It appears that the ALJ may have discounted her testimony about headaches based on "unremarkable" objective testing and the fact that Plaintiff did not report a headache on two occasions, as discussed above.

16

Neither explains why Plaintiff's headaches would not cause the reported symptoms. As the Seventh Circuit Court of Appeals has recognized, "Doctors use MRIs *to rule out other possible causes of headache*—such as tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). Like in *Moon*, no doctor indicated that the MRI evidence meant anything about Plaintiff's headaches. *Id*. And, the fact that on two occasions, Plaintiff reported that she did not have headache symptoms does not address the symptoms she experiences when she has headaches nor does it speak to the frequency of her headaches documented in the record and not discussed by the ALJ. By finding Plaintiff's headaches to be severe, the ALJ acknowledged their existence and that they would have more than a minimal effect on Plaintiff's ability to work; the ALJ was required to explain why Plaintiff's subjective statements about the effects of the headaches were not given full weight.

Remand is required to allow the ALJ an opportunity to properly evaluate the effect of Plaintiff's migraine headaches on her ability to work.

**C. Obesity**

Plaintiff argues that the ALJ failed to consider Plaintiff's combination of impairments in the RFC by not accounting for Plaintiff's obesity. Plaintiff is correct that the medical evidence of record reveals that Plaintiff is obese, with a BMI of between 32.5 and 33.9. (AR 359, 557). At step two, the ALJ acknowledged that Plaintiff's obesity is well documented in the record, citing the relevant medical records. (AR 17). The ALJ then found that there "is also no evidence in the record supporting a contention that the claimant's obesity causes more than minimal limitation of her ability to perform basic work activities, even when considered in combination." *Id*. In the RFC analysis, the ALJ noted that Plaintiff's allegations are based primarily on her mental impairments.

(AR 20). Regarding any physical limitations, the ALJ noted that Plaintiff testified that she has trouble lifting and carrying things and has limitations on her ability to stand but that Plaintiff could not explain why. (AR 20). In this argument in her brief, Plaintiff identifies no evidence that her obesity causes her any functional limitations. The ALJ did not err in her consideration of Plaintiff's obesity. *See* Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

### D. Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 7th day of March, 2018.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT